IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JOHN RUSSELL TOMIKEL #1208622,

    *Petitioner,*

v.                      Civil Action No. 2:18cv636

HAROLD W. CLARKE, Director,
Virginia Department of Corrections

    *Respondent.*

## MAGISTRATE JUDDGE'S REPORT AND RECOMMENDATION

Petitioner, John Russel Tomikel ("Petitioner" or "Tomikel") filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1). The Fairfax County Circuit Court previously convicted Petitioner of abduction, sexual penetration with an animate object, and two counts of sodomy. Sentencing Order, May 2, 2013, Commonwealth v. Tomikel, No. Fe-2012-777 (Fairfax Cir. Ct.). He was sentenced to life imprisonment on each of the four counts. Id. The habeas petition was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation. Because Tomikel's petition is time-barred and he has not shown any basis to toll the statute of limitations or excuse his untimely filing, the undersigned recommends that the court dismiss the petition.

1

## I. Statement of the Case

The Court of Appeals of Virginia summarized the facts produced during the Petitioner's trial:

> At about 3:00 a.m. on September 25, 1995[1], an assailant gained entry to the victim's vehicle, which she had parked in a Tysons Corner office park. The assailant choked the victim and threw her in the back seat of the car. He removed her underwear, licked her vagina and anus, and penetrated her vagina and anus with his finger. Pleading with the assailant to stop, the victim agreed to masturbate him. Using some cream, he had her rub his penis using her right hand. Afterward, the man exited the vehicle and fled.
> The victim recovered her glasses, which she was not wearing during the attack and drove to a nearby convenience store. In response to the victim's screams, the store clerk called 911.

Order at 5, Tomikel v. Commonwealth, No. 0952-13-4 (Va. Ct. App. Aug. 21, 2014).

After the police arrived, they collected the victim's clothing and secured her car as evidence and to conduct DNA testing. Id. at 5. The victim could not see her assailant clearly because it was dark, and she was not wearing her glasses, but she stated he was Caucasian with dark hair and a solid build. Id. at 6. She stated that he had a tattoo on his right arm. Id. Forensic scientists tested multiple DNA samples, including a hair found on

---

[1] Tomikel was not charged for the 1995 attack until 2003. The prosecution subsequently nolle prossed the charges because the victim was living in Israel and the prosecution had been unable to meet with her or discuss the case with her prior to trial. Proceedings, Nov. 17, 2003, Commonwealth v. Tomikel, No. Fe-2012-777 (Fairfax Cir. Ct.). The prosecution indicted him again in 2012 and he was tried in January 2013. Proceedings, Jan. 28, 2013, Commonwealth v. Tomikel, No. Fe-2012-777 (Fairfax Cir. Ct.).

the driver's seat and a swab from the victim's right hand, and determined that they were consistent with Petitioner's DNA profile. Id. With regards to the swab taken from the victim's hand, "the probability of selecting another individual with the same DQ alpha DNA profile was one in 1700 in the Caucasian population." Id. Additionally, the forensic scientists tested a hair that investigators found in the car, which they matched to Tomikel's profile, and determined the "probability of randomly selecting another individual with the same DNA profile was one in more than six billion." Id. In 2011, following advancements in DNA testing, an analyst also re-examined the victim's underwear and found a sperm, which was consistent with Tomikel's Y-chromosome profile. Id.

Following a jury trial where this evidence was presented, Tomikel was convicted of abduction, sexual penetration with an animate object, and two counts of sodomy. Tr. at 46-47, Tomikel, No. Fe-2012-777 (Fairfax Cir. Ct. Feb. 7, 2013). Tomikel was sentenced to life in prison pursuant to a final order of the Fairfax County Circuit Court. Tr. at 42-43, Tomikel, No. Fe-2012-777 (Fairfax Cir. Ct. May 2, 2013). Tomikel's appeal to the Court of Appeals of Virginia was denied by a single judge. Order at 1, Tomikel, No. 0952-13-4 (Va. Ct. App. Aug. 21, 2014). Tomikel then requested a three-judge review, which was denied for the same reasons stated in the single-judge order. Order at 1, Tomikel, No.

0952-13-4 (Va. Ct. App. Nov. 3, 2014). The Supreme Court of Virginia denied his appeal on June 1, 2015. Order, Tomikel v. Commonwealth, No. 141711 (Va. June 1, 2015). The United States Supreme Court denied Tomikel's petition for a writ of certiorari on November 30, 2015. Tomikel v. Virginia, No. 15-58047, 2015 WL 5050560 (U.S. Nov. 30, 2015). Tomikel, proceeding pro se, then filed a Petition for a Writ of Habeas Corpus in state court. Pet. for Appeal at 2, Tomikel v. Flemming, No. 170731 (Va. Mar. 2017). The state court denied Tomikel's petition on February 7, 2017 as time-barred under Virginia code § 8.01-645(A)(2). Id. at 2. On March 20, 2017, Tomikel mailed a Notice of Appeal to the circuit court, which was denied as untimely. Order, Tomikel v. Flemming, No. 170731 (Va. Oct. 24, 2017).

Tomikel filed this federal habeas petition on November 1, 2018. He claims he is entitled to relief based on the following grounds summarized from his petition:

1. He is actually innocent of the crimes of which he is accused;
2. His trial counsel rendered ineffective assistance;
3. The prosecutor engaged in misconduct by presenting false testimony;
4. His speedy trial rights were violated;
5. The trial judge was biased towards the prosecution;
6. He was denied the right to confront witnesses; and

4

> 7. The integrity of the trial record was compromised.

Pet. at 1-2 (ECF No. 1)².

While Tomikel has made many claims, the primary focus of his memorandum in support of the petition is on the alleged ineffective assistance of his trial counsel, alleged prosecutorial misconduct, and judicial bias. Id. at 2-5. Specifically, Tomikel discusses the victim's testimony and sketch that she drew; "the prosecution's manipulation of a planted 'jailhouse snitch;'" and the fact that he has never had a tattoo matching the victim's description. Resp. to Mot. to Dismiss Habeas Pet. at 1 (ECF No. 19). He generally faults his attorney for failing to exclude this evidence, the prosecutor for presenting it, and the trial judge for allowing it into evidence. Id. He also claims inconsistencies in the DNA evidence undermine the forensic analysts' conclusions and includes an affidavit by Dr. Brandt Cassidy to support his objections to the Certificates of Analysis. Id. at 1-2.

## II. Recommended Findings of Fact and Conclusions of Law

### A. Tomikel's Petition is Time-Barred

Pursuant to 28 U.S.C. § 2244(d)(1)(A)-(D), a prisoner seeking federal habeas corpus relief from a state court conviction is subject to a one-year statute of limitations. This statute of

---

² The habeas petition was transferred from the Western District of Virginia because "of the substantial advantages in resolving federal habeas actions in the federal district court that is nearest to the site from whence the underlying state conviction arose." Transfer Order (ECF No. 6) (citing Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 497-99 (1973)).

5

limitations begins to run from the date when (A) judgment becomes final; (B) any state created impediment to filing a petition is removed; (C) The United States Supreme Court recognizes the constitutional right asserted; or (D) the factual predicate of the claim was, or could have been, discovered with due diligence, whichever is latest. Id. If there is a properly filed state post-conviction review pending, the statute of limitations will toll. § 2244 (d)(2); see also Pace v. DiGuglielmo, 544 U.S. 408, 410 (2005).

Tomikel's petition does not allege any newly discovered facts, or a new constitutional right. The federal limitations period therefore began to run when the judgment became final. § 2244 (d)(1)(A). Under this rule, Tomikel's last date to timely pursue federal habeas relief was November 30, 2016. Thus, his petition in this court, filed on November 7, 2018, was almost two years late. Tomikel filed for a writ of certiorari in the United States Supreme Court, which was denied on November 30, 2015. The date that his writ for certiorari was denied is the date his conviction became final for purposes of federal review and the statute of limitations for the federal habeas petition began to run. § 2244 (d)(1)(A)-(D); see also McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). The statute of limitations expired one year later on November 30, 2016.

6

Tomikel filed a state habeas petition in the circuit court, but it was denied as time-barred. He then filed an untimely notice of appeal. When a state habeas petition is denied for being time-barred, it is not considered "properly filed" and the petitioner is not eligible for statutory tolling. See Pace, 544 U.S at 417 (holding that time limits are "filing" conditions and an untimely petition is not "properly filed" and does not trigger statutory tolling); See also Artuz v. Bennett, 531 U.S. 4, 8 (2000). Thus, Tomikel's late petition and appeal did not statutorily toll his federal petition for a writ of habeas corpus. See Pace, 544 U.S. at 417. Even if the late petition and appeal had tolled the statute of limitations, the appeal was denied on February 7, 2017, which means the statute of limitations would have expired—at the latest—a year later, February 2018. Thus, Tomikel's federal habeas petition, filed November 7, 2018, would still be untimely.

**B. Tomikel Provided Insufficient Evidence to Warrant Equitable Tolling**

In addition to statutory tolling, a petitioner's untimely filing can be excused if petitioner establishes circumstances that entitle him to equitable tolling. See Holland v. Florida, 560 U.S. 631, 645 (2010); Harris v. Hutchinson, 209 F.3d 325, 329-30 (4th Cir. 2000). Equitable tolling is available in two situations: (1) petitioner was prevented from asserting his claim by wrongful conduct on the part of the respondent, or (2) extraordinary

7

circumstances beyond the petitioner's control made it impossible to file on time. See Harris, 209 F.3d at 330. Tomikel has failed to show that equitable tolling was available to him. Tomikel has not alleged any wrongful conduct by the Commonwealth that would prevent him from timely asserting his claim, or any extraordinary circumstances beyond his control that would equitably toll the federal statute of limitations. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) ("Even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling."). Tomikel failed to file his petition within the one-year statute of limitations and has not shown any circumstances that would entitle him to equitable tolling; Therefore, his petition is time-barred.

**C. Tomikel Provided Insufficient Evidence of Actual Innocence**

A petitioner may also overcome a time-bar if the petitioner makes "a convincing showing of actual innocence." McQuiggin, 569 U.S. at 386. The Supreme Court noted "in certain exceptional cases, a compelling showing of actual innocence would enable a federal court to consider the merits of a petitioner's otherwise defaulted claims." Hayes v. Carver, 922 F.3d 212, 216 (4th Cir. 2019) (discussing the Supreme Court's decision in Schlup v. Delo, 513 U.S. 298 (1995)). To make a showing of actual innocence, the petitioner must present new, reliable evidence that would convince the court that no reasonable juror, presented with the new

8

evidence, could have found the petitioner guilty beyond a reasonable doubt. McQuiggin, 569 U.S. at 386 (citing Schlup, 513 U.S. at 329). Evidence that simply supports a theory previously presented at trial is insufficient to meet the standard of actual innocence. See Calderon v. Thompson, 523 U.S. 538, 562-63 (1998). The Schlup standard is difficult to meet; it is "demanding and permits review only in the extraordinary case." Hayes, 922 F.3d at 218 (quoting House v. Bell, 547 U.S. 518, 538 (2006)

Tomikel has failed to produce any new, credible evidence to support his claim of actual innocence. The only potentially new evidence Tomikel produced was an affidavit from Dr. Brandt Cassidy, PhD, a DNA expert hired by Tomikel's attorney. Resp. to Mot. to Dismiss Habeas Pet. at 3-7 (ECF No. 19). The affidavit from Dr. Cassidy, dated October 31, 2016, is new. It was apparently prepared after Tomikel's trial and conviction. But the information reported is not new. In this report, Dr. Cassidy discussed the inconsistencies and unconvincing nature of the Certificates of Analysis presented by the prosecution's experts in the case. Id. This is the same information Dr. Cassidy testified to in the trial court, and he has not made any new observations that would demonstrate Tomikel's actual innocence. Trial Tr. vol. 28, 28-45, Feb. 4, 2013.

When Tomikel's attorney first hired Dr. Cassidy, there was no DNA available for Dr. Cassidy to screen or examine himself. Trial

9

Tr. vol. 28, 13-14, Feb. 4, 2013. Instead, his testimony was limited to certain inconsistencies and problems with technique presented by the various analysts who created the Certificates of Analysis. Trial Tr. vol 28, 96, Feb. 4, 2013. That remains the case today. Dr. Cassidy was still unable to test the DNA evidence himself and, therefore, could only submit a report critiquing the other analyst's testimony. Resp. to Mot. to Dismiss Habeas Pet., Exhibit A (ECF No. 19). Tomikel, by presenting this "new" affidavit, is simply supporting a theory that his defense attorney, and Dr. Cassidy, already presented to the trial court.

Tomikel's brief also discusses the victim's testimony, in which she said her assailant was not wearing a shirt and he had a tattoo on his arm. Id. at 1. Tomikel asserts that he did not have a tattoo and never has had a tattoo, implying that the victim's testimony was therefore unreliable. Id. As with Dr. Cassidy's DNA critique, the fact that the victim stated her assailant had a tattoo and Tomikel does not have a tattoo is not "new evidence". The jury at Tomikel's trial heard the victim state in her testimony, and in a recording of her interview with detectives following the attack, that she believed her attacker had a tattoo, and that he was not wearing a shirt. Trial Tr. vol. 11, 24-25, Jan. 29, 2013. The trial court also heard Detective Joanne Stroder state that Tomikel did not have any tattoos when she investigated him. Trial Tr. vol. 11, 253, Jan. 29, 2013. Thus, the impeachment

10

value of this contradictory evidence was fully known by the jury when it returned its verdict.

Tomikel also claims that a "jailhouse snitch" gave false testimony when he testified that Tomikel had told the witness that he was wearing a shirt during the attack that made him look like he had a tattoo. Resp. to Mot. to Dismiss Habeas Pet. at 1 (ECF No. 19). Tomikel has claimed that this witness's testimony is false, but as with his other attacks, the validity of this witness's testimony was already vigorously called into question at the trial court. On cross examination, Tomikel's attorney asked the witness questions that pointed out inconsistencies and doubts about the witness's testimony. Trial Tr. vol. 18, 158-61, Jan. 30, 2013. The validity of this witness's testimony was left to be argued in closing. Tomikel's attorney argued that the testimony by "the jailhouse snitch" was questionable and motivated by a desire for a lesser sentence. Trial Tr. vol. 31, 74-76, Feb. 5, 2013. Thus, as with his other complaints, this issue was raised at trial and is not new, reliable evidence that could support a finding of actual innocence sufficient to excuse Tomikel's time-barred petition.

### III. Recommendation

Tomikel's claims are time-barred and he has not presented sufficient evidence to allow the court to consider his late filing. Therefore, the undersigned recommends that Motion to Dismiss (ECF

No. 16) be GRANTED and Tomikel's Petition for a Writ of Habeas Corpus (ECF No. 1) by a person in State Custody pursuant to 28 U.S.C. § 2254 be DENIED and DISMISSED WITH PREJUDICE.

### IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendation within fourteen (14) days from the date of mailing of this Report to the objecting party, see 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v.

Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the Petitioner and provide an electronic copy to counsel of record for the Respondent.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

June 21, 2019

13

## Clerk's Mailing Certificate

A copy of the foregoing was mailed this date to:

>John Russell Tomikel
>1208622
>River North Correctional Center
>329 Dell Brook Lane
>Independence, Va 24348

A copy of the foregoing was provided electronically this date to:

>Katherine Quinlan Adelfio
>Office of the Attorney General (Richmond)
>202 North Ninth Street
>Richmond, VA 23219

Fernando Galindo, Clerk

By _____
Deputy Clerk

_June 21_, 2019